**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVEL DANIEL,

      Petitioner,                       Civil No. 2:07-CV-12058
                                          HONORABLE ARTHUR J. TARNOW
v.                                      UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

      Respondent.

_____/

### OPINION AND ORDER CONDITIONALLY GRANTING
### THE PETITION FOR WRIT OF HABEAS CORPUS

     Marvel Daniel, ("petitioner"), presently confined at the Michigan Reformatory in

Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. §

2254. [1]  In his application, filed both *pro se* and through Nancy L. McGunn and Bradley

R. Hall, petitioner challenges his conviction for second-degree murder, M.C.L.A.

750.317.  Because his counsel failed to investigate, present a defense and call

witnesses, the petition for writ of habeas corpus is **CONDITIONALLY GRANTED.**

---

     [1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Oaks Correctional Facility, but has since been transferred to the Michigan Reformatory.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Warden Carmen Palmer in the caption.

*Daniel v. Palmer,* U.S.D.C. 07-12058-DT

## I. Background

Petitioner was originally charged with first-degree felony murder and first-degree

premeditated murder.  Following a bench trial in the Wayne County Circuit court,

petitioner was convicted of the lesser included offense of second-degree murder.  This

Court recites verbatim the relevant facts regarding petitioner's conviction from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> Derrick Mitchell was shot and killed on July 12, 2003, at approximately 9:30 p.m., while in his automobile on Novara Street in Detroit.  Mitchell, a known drug dealer, was shot by an unknown assailant, who was observed exiting from the passenger side of defendant's gray conversion van during the incident.   After shooting Mitchell, defendant's passenger removed a gray case or object out of Mitchell's car.  There was testimony that it was common knowledge in the neighborhood that Mitchell hid his drugs in stereo equipment in his car.  One witness testified that defendant was driving his van at the time of the shooting.  Two other witnesses also testified that defendant was driving his van at the time of the shooting, but they equivocated on this point at trial, stating that they assumed defendant was driving because they recognized the van as belonging to him.  One of the prosecution's witnesses, Darius Scott, testified that, shortly after the shooting, defendant contacted him by telephone and simply stated, "yep, yep, yep, yep."  Before that time, Scott and defendant had discussed the shooting death of another drug dealer, Shawn, who sold drugs with defendant out of a house on Novara Street.  Scott testified that he believed Mitchell was involved in Shawn's shooting.  Defendant was arrested five months after the shooting.
>
> Defendant offered an alibi defense.  His girlfriend testified that he was at her home from 2:00 p.m. until approximately midnight on the date Mitchell was shot.  During this timeframe, she had the keys to defendant's gray conversion van, and the van remained parked nearby. She testified that defendant's van could not have been near Novara Street at the time of the shooting.
> *People v. Daniel,* No. 257658, * 1 (Mich.Ct.App. December 15, 2005).

Following petitioner's conviction, a *Ginther* hearing was conducted on petitioner's

ineffective assistance of counsel claims on April 25, 2005. [2] After hearing testimony

and arguments from appellate counsel, the trial court denied petitioner's motion for a

new trial.

Petitioner's conviction was affirmed on appeal. *Id., reconsideration den.* February

15, 2006*; lv. den.* 476 Mich. 858; 718 N.W. 2d 337 (2006). Petitioner subsequently filed

a petition for a writ of habeas corpus on the following grounds:

I. Petitioner was denied his state and federal constitutional rights to
effective assistance of counsel by his attorney's failure to investigate,
present a defense, call witnesses and make objections.

II. Petitioner was denied his state and federal constitutional rights by
defense counsel's failure to move for disqualification of the trial court
where that court knew that petitioner had another pending murder charge.

III. Petitioner was denied his state and federal constitutional rights by the
improper closing argument where the prosecutor argued facts not in
evidence and vouched for the credibility of his witnesses and defense
counsel failed to object.

IV. Petitioner's state and federal constitutional rights were violated when
defense counsel failed to object to the scoring of Prior Record Variable 6
and Offense Variables 5 and 6 of the sentencing guidelines, which were
incorrectly scored, and where the trial court used Petitioner's sentence to
send a message to the community.

On November 4, 2008, this Court granted petitioner an evidentiary hearing with

respect to petitioner's first claim, which alleges that counsel was ineffective for failing to

call additional alibi witnesses on his behalf at his trial. The Court also ordered an

evidentiary hearing on petitioner's second claim that counsel was ineffective for failing

[2] *People v. Ginther,* 390 Mich. 436; 212 N.W. 2d 922 (1973).

to move to disqualify the trial court judge from presiding over his bench trial.  The Court

appointed counsel to represent petitioner at this evidentiary hearing and to file a

supplemental brief. *See Daniel v. Palmer,* No. 2008 WL 4826297 (E.D. Mich. November

4, 2008).  On September 11, 2009, this Court granted Petitioner's motion to expand the

scope of the evidentiary hearing to permit petitioner to present evidence relating to his

claim that counsel was ineffective for failing to investigate two eyewitnesses to the

crime.  An evidentiary hearing was conducted on petitioner's ineffective assistance of

counsel claim on February 22, 2010.  Petitioner and respondent have now filed

supplemental briefs.

## II.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States;
> or
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A.**     I. Petitioner was denied his state and federal constitutional rights to effective assistance of counsel by his attorney's failure to investigate, present a defense, call witnesses and make objections.

II. Petitioner was denied his state and federal constitutional rights by defense counsel's failure to move for disqualification of the trial court where that court knew that petitioner had another pending murder charge.

Petitioner's primary allegation is that counsel was ineffective for failing to investigate Dollie Muex and Shawn Patrick O'Neil, two eyewitnesses to the crime, as possible defense witnesses. These witnesses indicated that a white mini-van was used during the shooting, which was different in style and color from petitioner's van. Petitioner further contends that these witnesses told police that they saw more than one individual going into the victim's car after the shooting, which would have contradicted Simon Melton's testimony that he only observed one individual remove a VCR from the victim's car after the shooting.

Defense counsel testified at the *Ginther* hearing that he did not call Muex at trial, because she told the police that a van was involved in the chase of the victim's car, thus, corroborating the other witnesses' testimony. Counsel testified that he did not call O'Neil to testify because even though O'Neil claimed to see more than one person go into the victim's car following the shooting, counsel did not like the fact that O'Neil would testify about anyone going into the victim's car, because this would corroborate that a larceny had taken place so as to support a conviction for first-degree felony murder. (Tr. 4/25/2005, pp. 14-15).

Petitioner testified at the *Ginther* hearing that he and defense counsel had discussed the testimony of Mr. O'Neil and Ms. Muex, and that he had wanted his defense counsel to call those two individuals as witnesses at his trial. (*Id.,* p. 33). He also told trial counsel that he believed he needed an investigator to assist in his case. (*Id.*, p. 38).

This Court conducted an evidentiary hearing on petitioner's claim. Marveline Daniel, petitioner's mother, testified that in July 2003, at the time of the shooting, she owned a silver Chevy conversion van, which is depicted in Petitioner's Exhibits 1-A, 1-B, and 1-C. (Tr. 2/22/10, p. 7). Ms. Daniel testified that petitioner was the primary driver of the vehicle at that time. He drove it on a daily basis. (*Id.*).

Petitioner's counsel, William Winters testified that prior to petitioner's trial, he received statements taken from Dollie Muex and Shawn O'Neil on the night of the offense, as well as police reports which further detailed interviews of the two witnesses. (*Id.*, p. 14)(See Petitioner's Exhibits 2-A through 2-E). Winters never

visited the crime scene, nor did he interview Dollie Muex or Shawn O'Neil. (*Id.*, p. 20). Winters did not examine petitioner's van prior to trial. (*Id.*, p. 20). Winters adopted the testimony that he provided at the *Ginther* hearing in state court. (*Id.*, p. 21).

Shawn O'Neil testified that in July of 2003, he witnessed the shooting at Queen and Novara Streets in Detroit, Michigan, after dropping an employee off at his house. (*Id.*, pp. 23-25). O'Neil testified that it was still light out and he could see the neighborhood clearly. O'Neil observed a car, possibly a Monte Carlo, drive by twice. The second time that the car drove by, a van was driving alongside it. O'Neil described the vehicle as being a white mini-van, possibly with a sliding door on the side. It was a smaller vehicle, and did not appear to have windows on either side. (*Id.*, pp. 23, 26). When asked to examine two photos of white minivans (Petitioner's Exhibits, 3-A and 3-B), O'Neil believed that the white van he saw was more similar to 3-B. O'Neil stated that he was sure that it was a white mini-van, and that it did not have windows on the sides, except for the driver and front-seat passenger side. (*Id.*, pp. 28, 39). When the vehicles had driven west of the intersection of Queen and Novara, O'Neil heard a bang which he thought was a car backfiring. O'Neil later realized that the sound he heard was a gunshot. The vehicles were heading east on Novara at the time. The car crossed the intersection and crashed into the vehicle on the side of the road. The van turned right, or "southeast" onto Queen. O'Neil testified that as the van turned, he believed that he could hear the van door slide shut. O'Neil testified that after the car crashed, two young men approached the car, running south on Queen, grabbed

something that looked like a black box out of the car, and ran back in the same

direction. (*Id.*, pp. 24-27).

O'Neil testified that he has worked in the motor vehicle pressure washing

business for twenty years. In his employment, O'Neil testified that he has worked with

a number of types of vehicles, including vans and trucks. O'Neil was asked to examine

a picture of petitioner's van, depicted in Petitioner's Exhibit 1-A. O'Neil did not believe

this was the van that he saw at the crime scene on July 12, 2003. (*Id.* pp. 22; 29).

O'Neil indicated that the van that he observed at the crime scene was smaller than the

van in Exhibits 1-A through 1-C. (*Id.*, p. 38).

O'Neil spoke to several police officers on the night of the incident and signed a

statement that was taken from him. (*Id.*, p. 29)(Petitioner's Exhibit 4). O'Neil verified

that the information that he provided in this statement was accurate. O'Neil indicated

that he did not mention the white mini-van in his

statement to police because he believed that the officers were asking him if there were

vehicles around the car that had crashed. (*Id.*, p. 31). O'Neil did not recall being asked

by the police about the vehicle that the shots came from, and was surprised that no

one ever called him to testify at petitioner's trial. (*Id.*, p. 35).

The Court admitted Petitioner's Exhibit 5, the affidavit of Dollie Muex, into

evidence. (Id., p. 40). Ms. Muex's affidavit was almost identical to the statement she

provided to police on the night of the shooting. Muex indicated that she was on the

front porch of her daughter's house, located at the intersection of Queen and Novara,

at the time of the shooting. Muex witnessed two vehicles driving side-by-side, at a fast

rate of speed, eastbound on Novara. Muex described one of the vehicles as a car, and the other was a white mini-van. The white mini-van pulled alongside the car. Ms. Muex heard a gunshot come from the front passenger side of the white mini-van. After the gunshot, the car drove through the intersection of Queen and Novara, veered right, before hitting a tree. The van continued driving down toward Hayes. After the car ran into the tree, Muex observed two or three boys run down Queen to the car, before running back north on Queen.

In rejecting petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals declined to "second-guess counsel's decision not to *call* two eyewitnesses, who counsel believed would actually bolster the prosecution's case if called." *Daniel,* Slip. Op. at 3 (emphasis added). The Michigan Court of Appeals further concluded that petitioner had failed to meet the burden of proving that the outcome of his case would have been different if his counsel had called other witnesses to testify. *Id.* at * 3-4. Significantly, the Michigan Court of Appeals failed to address petitioner's claim that counsel was ineffective for failing to investigate or interview these two witnesses.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's

behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Petitioner contends that this Court should engage in a *de novo* review of petitioner's ineffective assistance of counsel claim for two reasons. First, petitioner argues that the Michigan state courts never considered petitioner's failure to investigate claim "on the merits" because they were unaware of the critical evidence that has been presented to this Court, due to the fact that the state trial court refused to grant petitioner funds to hire an investigator to develop the evidence that petitioner presented to this Court. Secondly, petitioner contends that although he explicitly argued before the Michigan Court of Appeals that his trial attorney was ineffective for failing to investigate certain witnesses, the Michigan Court of Appeals addressed only whether it was ineffective not

to call these witnesses. Because the Michigan Court of Appeals did not squarely address the failure to investigate claim, there was no "adjudicat[ion] on the merits" to which this Court should defer.

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court held that the deferential standard of review contained in the Antiterrorism and Effective Death

Penalty Act (AEDPA) does not apply to federal constitutional claims that were not considered "on the merits" by the state courts.  The petitioner in *Wiggins* raised a claim of ineffective assistance of counsel.  Because the Maryland state courts had never considered the second prong of the *Strickland* standard for ineffective assistance of counsel claims, the Supreme Court held that its review of petitioner's ineffective assistance of counsel claim was "not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis." *Wiggins*, 539 U.S. at 534.  The Court proceeded to apply a *de novo* standard of review regarding petitioner's claim. *See id.*

In *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003), the Sixth Circuit concluded that the Michigan courts' failure to consider the petitioner's ineffective assistance of counsel claims rendered the AEDPA's deferential standard of review inapplicable, and instead applied a *de novo* standard.

This Court concludes that petitioner is entitled to a *de novo* review of his ineffective assistance of counsel claim.  First, the state court failed to provide funds to petitioner hire an investigator to develop the evidence that petitioner presented to this Court in support of his claim, depriving petitioner of an opportunity to present the evidence in support of his claim to the Michigan courts.  Secondly, the Michigan Court of Appeals ignored the gravamen of petitioner's claim, namely, that counsel was ineffective for failing to investigate or to interview these witnesses.  Because petitioner's failure to investigate claim was never adjudicated on the merits, "there are simply no results, let alone reasoning, to which this court can defer.  Without such

results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *See McKenzie v. Smith,* 326 F. 3d 721, 726 (6th Cir. 2003). Accordingly, this Court will review petitioner's claim *de novo.* However, even if the deference standard review of the AEDPA were applied, the Petitioner has satisfied the deficiency prong. See, *English v Romanowski*, __F3d __ (6th Cir. 2010, 08-2611).

When defense counsel is made aware that a potential witness may provide testimony that is beneficial to the defense, counsel's failure to interview the potential witness is ineffective. *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007); *Towns v. Smith,* 395 F. 3d 251, 258-60 (6th Cir. 2005); *See also Pillette v. Berghuis,* 630 F.Supp. 2d 791, 800 (E.D. Mich. 2009). "The failure to interview key defense witnesses is objectively unreasonable" under *Strickland. Poindexter v. Booker*, 301 Fed.Appx. 522, 528 (6th Cir. 2008). "Constitutionally effective counsel must develop trial strategy in the true sense-not what bears a false label of 'strategy'-based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez*, 490 F.3d at 489. Finally, "[W]here counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release', counsel's inaction constitutes negligence, not trial strategy." *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992)(internal citations omitted).

Petitioner's trial attorney claims that he did not present the testimony of O'Neil or Muex because he feared that they might bolster the prosecution's evidence and undermine petitioner's defense. Trial counsel however, admitted at the *Ginther* hearing in state court and at the evidentiary hearing before this Court that he made no effort to speak with Mr. O'Neil or Ms. Muex to confirm his suspicions. Indeed, trial counsel acknowledged that he settled upon his trial strategy based only on the reports of Mr. O'Neil's and Ms. Muex's statements to the police, rather than upon any independent investigation of these witnesses.

A review of the witness statements do not indicate that O'Neil and Muex would bolster the prosecution's case. Muex described a white, newer model mini-van with gold rims, not the gray conversion van described by the witnesses at trial. Both Muex and O'Neil state that the shots were fired from within the van, while it was moving, which contradicted the prosecution witnesses' testimony that the shooter emerged from the van. Both Both Muex and O'Neil stated that two to three young men approached the victim's car on foot after the crash and removed an item from the car. This evidence contradicted the prosecution witnesses' testimony that the van passenger/shooter entered the car on his own and stole an item.

Petitioner has shown that trial counsel was deficient for failing to interview these two disinterested eyewitnesses to the shooting. Although the Michigan Court of Appeals "focused largely on the notion that [counsel's] decision not to call" O'Neil and Muex "was rooted in what it believed to be a reasonable trial strategy,", "that belief was grounded on a fatally flawed foundation, for if [counsel] had only engaged in the

13

minimal—and essential—step of interviewing the witnesses, he would have learned

that they *could* testify" favorably for petitioner at his trial. *Ramonez,* 490 F. 3d at 488

(emphasis original). The "[c]entral teaching of *Strickland* . . . [is] that the investigation

leading to the choice of a so-called trial strategy must itself have been reasonably

conducted lest the 'strategic' choice erected upon it rest on a rotten foundation." *Id.*

Therefore, trial counsel "must develop trial strategy . . . based on what investigation

reveals witnesses will actually testify to, not based on what counsel guesses they might

say in the absence of full investigation." *Id.* at 489.

Petitioner's counsel decided not to call O'Neil and Muex as defense witnesses

without interviewing them. This Court notes that "[a] purportedly strategic decision is

not objectively reasonable 'when the attorney has failed to investigate his options and

make a reasonable choice between them.'" *Towns,* 395 F. 3d at 258(internal quotation

omitted). Having failed to contact O'Neil or Muex, counsel "was ill equipped to assess

[their] credibility or persuasiveness as a witness," or to evaluate and weigh the risks

and benefits of putting either witness on the stand. *Id.* at p. 260. In this case, it was

objectively unreasonable for counsel to make the decision not to call O'Neil or Muex to

testify without first investigating these witnesses, or at least making a reasoned

professional judgment that such investigation was unnecessary. *Id.* at 260 (citations

omitted).

Furthermore, counsel was deficient for choosing to rely solely on O'Neil's and

Muex's statements to the police in making his determination not to interview these two

disinterested eyewitnesses to the crime. *See e.g., Anderson v. Johnson*, 338 F. 3d

382, 392 (5th Cir. 2003) (finding a trial attorney is constitutionally deficient where he has "relied exclusively on the investigative work of the State and based his own pretrial 'investigation' on assumptions divined from a review of the State's files"). This Court concludes that counsel was deficient for failing to adequately investigate or interview these witnesses.

This Court further concludes that petitioner was prejudiced by counsel's failure to interview or investigate O'Neil or Muex, in light of the weak and questionable evidence presented in this case. Two of the three witnesses who claimed to identify petitioner as being present at the shooting were incarcerated at the time of petitioner's trial. Only one of the three main witnesses to testify against petitioner positively identified him at trial as being the driver of the van on the night in question. This witness initially failed to appear for petitioner's trial, because he had warrants out for his arrest. The other two witnesses equivocated on this point at trial, acknowledging that they assumed petitioner was driving because they recognized the van as belonging to him. Most of the witnesses in this case were drug dealers or drug users. None of the witnesses reported the shooting to the police on the night of the murder or close to that date. The prosecution witnesses offered conflicting testimony concerning the nature of the contact between the vehicles prior to the shooting, the location of the shooter, the circumstances surrounding the theft from the victim's vehicle following the shooting, and the location that the van drove after the shooting. Three of the prosecution witnesses, Scott, Melton, Graham, knew both petitioner and the victim. The fourth trial witness, Riley, was a friend of the victim, and offered testimony that was

so convoluted that the prosecutor basically advised the court to reject it.  There was no physicial evidence linking petitioner to the crime.  The medical examiner's findings that there was no close-range firing in this case contradicted the witnesses' testimony about the shooter going up to the car and shooting the victim at close range.      Investigation of Muex and O'Neil would have enabled trial counsel to effectively cross-examine the prosecution's witnesses and to highlight the serious discrepancies in their testimony.  Counsel also could have presented Muex and O'Neil as the only two disinterested people who did not know the victim and/or petitioner, but who were able to present critical information about the shooting.  Most importantly, Muex and O'Neil would have testified that the van that was used in the shooting was a different color and make from petitioner's van.  This would have undermined the testimony of the three prosecution witnesses who identified petitioner as being the driver of the van used in the shooting, because it would have called into question whether petitioner's van was used in the shooting.  This evidence would have particularly impeached Darius Scott and Prentice Graham, because neither man unequivocally identified petitioner as the driver of the van, but appeared to base their identification of petitioner on the assumption that it was his van that was used during the shooting.  Finally, because O'Neil and Muex offered an account of the circumstances surrounding the shooting that was different from the prosecution witnesses, their testimony could have impeached the credibility of the prosecution witnesses with respect to their testimony regarding the shooting.

Because O'Neil and Muex would have undermined the prosecution case, counsel's failure to investigate and to produce these witnesses at petitioner's trial was

prejudicial to petitioner. *See Pillette,* 630 F. Supp. 2d at 800.  Having undertaken such a *de novo* review[3] of petitioner's claim, and having considered the statements and the testimony of O'Neil and Muex, the Court finds that the testimony of these witnesses might well have influenced the factfinder's appraisal of petitioner's guilt.  The likelihood of a different result had their testimony been presented is sufficient to undermine the Court's confidence in the outcome at trial. *Id.*  Petitioner's case was therefore prejudiced by counsel's failure to interview and to call these potential defense witnesses*. See Ramonez*, 490 F.3d at 491.  Petitioner is entitled to habeas relief on this claim.

Because the Court is granting petitioner a writ of habeas corpus on his part of his ineffective assistance of counsel claim, the Court will only briefly address petitioner's remaining claims. *See Brown v. Palmer,* 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005). [4]

Petitioner next contends that counsel was ineffective for failing to call an expert in close-range gunfire.  Counsel testified at the *Ginther* hearing that he did not hire an expert with respect to close-range gun firing, because the prosecutor and defense

_____

[3] Even under the higher AEDPA review standard, the result would be ther same. See, *English, supra.*

[4]  On March 11, 2010, petitioner moved to withdraw his claim regarding defense counsel's failure to investigate or to call alibi witnesses.  A habeas petitioner can withdraw a claim from a habeas petition as long as the request is made knowingly, voluntarily, and intelligently. *See Mullins v. Schriro,* No. 2008 WL 4368604, * 4 (D. Ariz. September 22, 2008); *See also Talbert v. Stovall,* Copy, No. 2009 WL 1448808 (E.D. Mich. May 21, 2009).

counsel stipulated that the medical examiner found no evidence of close-range gunfire. Counsel explained that this stipulation cast doubt on one witness' testimony that the shooter was close to the victim's car when he fired his weapon. *Daniel,* Slip. Op. at * 2. Counsel's failure to obtain an expert in close-range gunfire did not constitute ineffective assistance of counsel, in light of the fact that counsel obtained a stipulation from the prosecutor to admit the medical examiner's findings that there had been no evidence of close-range firing. *See e.g. Wong v. Money,* 142 F. 3d 313, 322 (6th Cir. 1998).

Petitioner next claims that counsel was ineffective in failing to check telephone call records to determine if petitioner had, in fact, made a telephone call to Darius Scott on the night in question. Defense counsel testified at the *Ginther* hearing that "based on the nature of some of the witnesses and the parties involved here, being in the narcotics business where cell phone records and cell phones themselves are sometimes used interchangeably and discarded, I thought it would be fruitless to try to obtain those." *Daniel,* Slip. Op. at * 2.

Petitioner is unable to show that he was prejudiced by counsel's failure to obtain telephone call records to determine whether petitioner called Darius Scott after the shooting, in light of the fact that petitioner could have used another cell phone other than his own or a land-line phone to call Darius Scott after the shooting. *See e.g. Jones v. Wallace,* 525 F. 3d 500, 504-05 (7th Cir. 2008).

Petitioner next contends that counsel was ineffective for failing to obtain LEIN (Law Enforcement Information Network) information regarding the prosecution witnesses to impeach their credibility. Counsel testified that although he did not obtain

LEIN information regarding the witnesses' past criminal histories, he did obtain information regarding the witnesses' prior criminal records from the Wayne County Circuit Court computers. *Daniel,* Slip. Op. at * 2-3. The Michigan Court of Appeals rejected this claim, because petitioner had failed to show that any LEIN information for any witness was different than the information that counsel obtained from the court computers. *Id.*

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001). Petitioner has failed to present any evidence that the LEIN information with respect to the prosecution witnesses differed in any way from the information that counsel obtained about these witnesses from the court's computers. Accordingly, he is not entitled to habeas relief on this claim. *See White v. Carroll,* 416 F. Supp. 2d 270, 279 (D. Del. 2006).

Petitioner further claims that counsel was ineffective for failing to interview Simon Melton prior to trial. In rejecting this claim, the Michigan Court of Appeals noted that defense counsel admitted that he did not interview Melton, but that the record revealed that Melton had been difficult to locate and bring to trial and the trial had to be adjourned on July 21, 2004, because Melton could not be found. The Michigan Court of Appeals concluded that nothing in the record supported that counsel would have found Melton on his own and obtained an interview that would have led to the discovery of facts that would have been supportive of petitioner's case. *Daniel,* Slip. Op. at * 3.

Petitioner has not established that his counsel was ineffective for failing to conduct a pre-trial interview of Simon Melton, because he has failed to provide any evidence that Melton was willing to talk with defense counsel other than from the witness stand or that counsel's cross-examination of this witness was somehow inadequate. *See U.S. v. Vargas,* 871 F. Supp. 623, 624 (S.D.N.Y. 1994).

In his second claim, petitioner argues that counsel was ineffective for failing to move to disqualify the trial court judge from presiding over his bench trial, because the judge was aware that petitioner had already been convicted of another murder by a jury before the same judge.

The Michigan Court of Appeals rejected petitioner's second claim, finding that the trial court judge's factual findings did not reveal that he considered petitioner's past conviction in arriving at the verdict. *Daniel,* Slip. Op. at * 5.

Assuming that counsel was deficient in consenting to a bench trial before the judge, petitioner has presented no evidence that trial court judge had a preconceived notion of petitioner's guilt with respect to this charge or that the judge's rulings were biased in any way.  Petitioner has therefore failed to show that he was prejudiced by counsel's failure to move for the disqualification of this judge. *See Willis v. Smith,* 351 F. 3d 741, 745-46 (6th Cir. 2003)  Accordingly, petitioner is not entitled to habeas relief on his second claim.

**B.** III. Petitioner was denied his state and federal constitutional rights by the improper closing argument where the prosecutor argued facts not in evidence and vouched for the credibility of his witnesses and defense counsel failed to object.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).

Petitioner first claims that the prosecutor committed misconduct by mischaracterizing evidence when he argued that the victim's killing was an act of revenge for the murder of another drug dealer and that the victim was involved in this dealer's murder.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the prosecutor's arguments were reasonable inferences from the evidence presented at trial. Testimony was presented that the other drug dealer, "Shawn", was killed on July 4, 2003, on the same block where the victim was killed. Darius Scott testified that there was "word in the street" about Shawn's killer. Scott believed that the victim was somehow involved in Shawn's murder. Scott testified that he and petitioner had discussed the circumstances of Shawn's murder. Scott also testified that petitioner and Shawn had sold drugs together out of the same house. The prosecutor's argument that the victim's killing was an act of revenge for the murder of another drug dealer and that the victim was involved in this dealer's murder was a reasonable inference from the evidence presented.

Petitioner further claims that the prosecutor vouched for the credibility of Prentice Graham.

The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).

In the present case, the prosecutor did not vouch for Graham's credibility, but merely pointed out that Graham admitted at trial that he had originally told the police that petitioner was the driver of the van, but had changed his testimony and had claimed that he had only seen the van, not the driver. The prosecutor specifically noted that the judge would have to make a credibility determination as to which version of events was real. Because the prosecutor based his remarks on the evidence presented at trial, the prosecutor's remarks did not rise to the level of vouching.

22

Finally, the prosecutor's arguments in his case did not rise to the level of constitutionally impermissible misconduct warranting habeas relief, because the comments were isolated and would not likely have prejudiced a trial judge in a bench trial. *Matthews v. Abramajtys,* 92 F.Supp.2d 615, 642 (E.D. Mich. 2000); *aff'd in part and rev'd in part on other grds,* 319 F.3d 780 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his third claim.

    **C.**    IV. Petitioner's state and federal constitutional rights were violated when defense counsel failed to object to the scoring of Prior Record Variable 6 and Offense Variables 5 and 6 of the sentencing guidelines, which were incorrectly scored, and where the trial court used Petitioner's sentence to send a message to the community.

Petitioner lastly brings several challenges to his sentence.

Petitioner first contends that the sentencing guidelines were incorrectly scored. The state trial court's allegedly improper interpretation of the state's sentencing guidelines is not a cognizable claim for federal habeas review. *See Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).

Petitioner further contends that in scoring the sentencing guidelines range, the trial court violated the Supreme Court's holding in *Blakely v. Washington,* 542 U.S. 296 (2004), where the Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence.  The decision in *Blakely* has no application to petitioner's sentence.  Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09.  The holdings in *Apprendi* and *Blakely* do not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010).  Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate petitioner's due process rights or his right to a jury trial. *Id.* at 497.  Petitioner is not entitled to habeas relief on his *Blakely* claim. *Id.; See also Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007).

Petitioner further claims that the trial court violated his right to individualized sentencing by stating that he wanted to send a message to the community.  The United States Supreme Court has refused to extend the doctrine of individualized sentencing to noncapital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995-996 (1991).  Petitioner is therefore not entitled to relief on this claim.

*Daniel v. Palmer,* U.S.D.C. 07-12058-DT

## IV.  ORDER

   **IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT
OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE
TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY DAYS
OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING
RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**


                                    S/Arthur J. Tarnow
                                    Arthur J. Tarnow
Dated:  June 30, 2010               Senior United States District Judge


I hereby certify that a copy of the foregoing document was served upon counsel of
record on June 30, 2010, by electronic and/or ordinary mail.

                                    S/Catherine A. Pickles
                                    Judicial Assistant